# IN THE UNITED DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND
# NORTHERN DIVISION

CRAIG KEMP
536 N. Highland Avenue
Baltimore, Maryland 21205
County:  Baltimore City, MD

YVONNE RICE
3224 Chesterfield Avenue
Baltimore, Maryland 21213
County:  Baltimore City, MD

CRYSTAL KEMP
3238 Kenyon Avenue
Baltimore Maryland 21213
County:  Baltimore City, MD

SEAN COZART
3580 Clubhouse Circle, Apt. C
Decatur, Georgia 30032
County:  Dekalb County, GA

THOMAS FRANKLIN
3202 Essex Road
Woodlawn, Maryland 21207
County:  Baltimore County, MD

JAWAN ROBERTS
1423 Kitmore Road
Baltimore, Maryland 21209
County:  Baltimore City, MD

SHAHED MOODY
1225 N. Linwood Avenue
Baltimore, Maryland 21213
County:  Baltimore City, MD

DAVID BAZEMORE
3504 Wild Cherry Road
Windsor Mill, Maryland 21244
County:  Baltimore County, MD

**Civil Action No.** _____

DEMAND FOR JURY TRIAL
FOR MONETARY DAMAGES
FOR VIOLATION OF
PLAINTIFFS' CIVIL RIGHTS

1

STEWART BRICE
201 Poplar Ridge Court
Owings Mills, Maryland 21117
County:  Baltimore City, MD

REGINA FAIR
511 East 43rd Street, Apt. 2B
Baltimore, Maryland 21212
County:  Baltimore City, MD

COLIN HINES
5306 Winner Avenue
Baltimore, Maryland 21215
County:  Baltimore City, MD

ELWAY WILLIAMS
3511 Shannon Drive
Baltimore Maryland 21213
County:  Baltimore City, MD

ALDEN BRIDGES
5566 Whitby Road
Baltimore, Maryland 21206
County:  Baltimore City, MD

RONALD COX
2810 Everton Avenue
Baltimore, Maryland 21214
County:  Baltimore City, MD

TIMOTHY CLIFTON
6723 Glenkirk Road
Towson, Maryland 21239
County:  Baltimore County, MD

MICHAEL CARTER
2810 Everton Avenue
Baltimore, Maryland 21214
County:  Baltimore City, MD

DERIC FORD
2108 Westfield Avenue
Baltimore, Maryland 21214
County:  Baltimore City, MD

Plaintiffs

V.

WILLIAM HARRIS
c/o Baltimore Police Department
601 E. Fayette Street
Baltimore, Maryland 21202
County: Baltimore City, MD

SHAKIL MOSS
c/o Baltimore Police Department
601 E. Fayette Street
Baltimore, Maryland 21202
County: Baltimore City, MD

AGUSTIN RODRIGUEZ
c/o Baltimore Police Department
601 E. Fayette Street
Baltimore, Maryland 21202
County: Baltimore City, MD

KIAM PRESTON
c/o Baltimore Police Department
601 E. Fayette Street
Baltimore, Maryland 21202
County: Baltimore City, MD

NATHAN ROLES
c/o Baltimore Police Department
601 E. Fayette Street
Baltimore, Maryland 21202
County: Baltimore City, MD

TEREE SHIELDS
c/o Baltimore Police Department
601 E. Fayette Street
Baltimore, Maryland 21202
County: Baltimore City, MD

CHEMENE WASHINGTON
c/o Baltimore Police Department
601 E. Fayette Street
Baltimore, Maryland 21202
County: Baltimore City, MD

DEBORAH OWENS
c/o Baltimore Police Department
601 E. Fayette Street
Baltimore, Maryland 21202
County: Baltimore City, MD

LEONARD D. HAMM
*Last Known Address:*
c/o Baltimore Police Department
601 E. Fayette Street
Baltimore, Maryland 21202
County: Baltimore City, MD

MAYOR AND CITY COUNCIL OF BALTIMORE CITY
100 North Holliday Street
Baltimore, Maryland 21202
County: Baltimore City, MD

THE BALTIMORE POLICE DEPARTMENT
601 E. Fayette Street
Baltimore, Maryland 21202
County: Baltimore City, MD

JOHN DOES 1-5
Unknown Police Officers
c/o Baltimore Police Department
601 E. Fayette Street
Baltimore, Maryland 21202
County: Baltimore City, MD

JOHN DOES 6-10
Unknown Supervisory Officers
c/o Baltimore Police Department
601 E. Fayette Street
Baltimore, Maryland 21202
County: Baltimore City, MD

                    Defendants
*     *     *     *     *     *     *     *     *     *     *     *     *     *

## I. <u>INTRODUCTION</u>

1.    This is a civil rights action for monetary damages for violation of Plaintiffs' rights as secured by the United States Constitution, the laws of the United States, the Maryland Declaration of Rights and the laws of the State of Maryland against several individual police officers belonging to a Special Enforcement Team, see ¶¶ 26-32, 37,  (*hereinafter* "SET unit"), Colonel Deborah Owens and other unknown supervisors within the Baltimore Police Department (*hereinafter* "Unknown Supervisors"), former Police Commissioner Leonard Hamm (*hereinafter* "Hamm"), the Mayor and City Council of Baltimore (*hereinafter* "MCC"), and the Baltimore Police Department (*hereinafter* "BPD").

2.    The Plaintiffs allege that individual police officers belonging to a SET unit, *infra*, individually and collectively, among other things, unlawfully, improperly, unconstitutionally and without a warrant or probable cause stopped, detained, searched and seized the Plaintiffs and unlawfully, improperly, unconstitutionally and without a warrant or probable cause searched the Plaintiffs' residences and seized items therein.

3.    The Plaintiffs allege that the BPD, Hamm, the MCC, Owens and/or other Unknown Supervisors, *infra*, are liable for the actions of individual police officers belonging to the aforementioned SET unit because, as set forth more fully *infra*, they acquiesced in, tolerated and permitted a pattern and practice of unlawful, improper, and unconstitutional stops, detentions, searches and seizures; failed to properly investigate such incidents and discipline the officers involved; failed to correct the unconstitutional actions of the SET unit officers involved; created a SET unit in which Harris was placed in a supervisory role and promoted Harris to sergeant

5

despite prior instances of misconduct; failed to properly and adequately supervise the officers involved; and otherwise engaged in, or failed to engage in, other supervisory conduct that would have deterred and/or prevented the wrongful, improper, unconstitutional and illegal conduct of the officers involved. As a result, the individual police officers belonging to the Special Enforcement Team, discussed *infra*, were encouraged to believe that they could violate the rights of persons such as the Plaintiffs with impunity.

## II. JURISDICTION AND VENUE

4.     Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331, 1367(a), 42 U.S.C. §§ 1983,1988 and the Fourth and Fourteenth Amendments to the United States Constitution.

5.     Venue is proper under 28 U.S.C. §1391 in that the Defendants and Plaintiff reside and the cause of action arises in the Northern District of Maryland.

6.     This Court has personal jurisdiction over The MCC and The BPD because they are entities located within Maryland.

7.     This Court has personal jurisdiction over Hamm, Owens, other Unknown Supervisors (John Does 6-10), Harris, Moss, Rodriguez, Preston, Roles, Shields, Washington and other Unknown Members of the SET 'B' squad (John Does 1-5), because they maintain domiciles within the State of Maryland and/or their tortuous actions and omissions occurred and caused injury within the State of Maryland and they are (or were at the time of the illegal acts) all employed within Maryland, thus performing a character of work or service within Maryland.

8. The amount in controversy exceeds Ten Thousand Dollars, excluding interests and costs.

## III. **PARTIES**

9. Plaintiff Craig Kemp (*hereinafter* "Kemp") is a United States citizen presently domiciled in the State of Maryland.

10. Plaintiff Yvonne Rice (*hereinafter* "Rice") is a United States citizen presently domiciled in the State of Maryland.

11. Plaintiff Crystal Kemp (*hereinafter* "Ms. Kemp") is a United States citizen presently domiciled in the State of Maryland.

12. Plaintiff Sean Cozart (*hereinafter* "Cozart") is a United States citizen presently domiciled in the State of Georgia.

13. Plaintiff Ronald Cox (*hereinafter* "Cox") is a United States citizen presently domiciled in the State of Maryland.

14. Plaintiff Timothy Clifton (*hereinafter* "Clifton") is a United States citizen presently domiciled in the State of Maryland.

15. Plaintiff Michael Carter (*hereinafter* "Carter") is a United States citizen presently domiciled in the State of Maryland.

16. Plaintiff Deric Ford (*hereinafter* "Ford") is a United States citizen presently domiciled in the State of Maryland.

17. Plaintiff Thomas Franklin (*hereinafter* "Franklin") is a United States citizen presently domiciled in the State of Maryland.

18. Plaintiff Jawan Roberts (*hereinafter* "Roberts") is a United States citizen presently domiciled in the State of Maryland.

19.     Plaintiff Shahed Moody (*hereinafter* "Moody") is a United States citizen presently domiciled in the State of Maryland.

20.     Plaintiff David Bazemore (*hereinafter* "Bazemore") is a United States citizen presently domiciled in the State of Maryland.

21.     Plaintiff Stewart Brice (*hereinafter* "Brice") is a United States citizen presently domiciled in the State of Maryland.

22.     Plaintiff Regina Fair (*hereinafter* "Fair") is a United States citizen presently domiciled in the State of Maryland.

23.     Plaintiff Colin Hines (*hereinafter* "Hines") is a United States citizen presently domiciled in the State of Maryland.

24.     Plaintiff Elway Williams (*hereinafter* "Williams") is a United States citizen presently domiciled in the State of Maryland.

25.     Plaintiff Alden Bridges (*hereinafter* "Bridges") is a United States citizen presently domiciled in the State of Maryland.

26.     Defendant William Harris, (*hereinafter* "Harris") sequence number E450, was, at all times relevant to this action, a duly appointed and acting police officer with the BPD. As a police officer he was, at all times herein relevant, acting within the scope of his employment and under color of state law.  He is sued in his official and individual capacity.

27.     Defendant Shakil Moss, (*hereinafter* "Moss") sequence number H431, was, at all times relevant to this action, a duly appointed and acting police officer with the BPD. As a police officer he was, at all times herein relevant, acting within the scope of

his employment and under color of state law. He is sued in his official and individual capacity.

28. Defendant Agustin Rodriguez, (*hereinafter* "Rodriguez") sequence number H140, was, at all times relevant to this action, a duly appointed and acting police officer with the BPD. As a police officer he was, at all times herein relevant, acting within the scope of his employment and under color of state law. He is sued in his official and individual capacity.

29. Defendant Kiam Preston, (*hereinafter* "Preston") sequence number G638, was, at all times relevant to this action, a duly appointed and acting police officer with the BPD. As a police officer he was, at all times herein relevant, acting within the scope of his employment and under color of state law. He is sued in his official and individual capacity.

30. Defendant Nathan Roles, (*hereinafter* "Roles") sequence number G179, was, at all times relevant to this action, a duly appointed and acting police officer with the BPD. As a police officer he was, at all times herein relevant, acting within the scope of his employment and under color of state law. He is sued in his official and individual capacity.

31. Defendant Teree Shields, (*hereinafter* "Shields") sequence number G705 was, at all times relevant to this action, a duly appointed and acting police officer with the BPD. As a police officer she was, at all times herein relevant, acting within the scope of her employment and under color of state law. She is sued in her official and individual capacity.

32.    Defendant Officer Chemene Washington, (*hereinafter* "Washington") sequence number H245, was, at all times relevant to this action, a duly appointed and acting police officer with the BPD. As a police officer she was, at all times herein relevant, acting within the scope of her employment and under color of state law.  She is sued in her official and individual capacity.

33.    Defendant Baltimore Police Department (*hereinafter* "BPD"), a fully operational police department, has strong practical links to and was, at all times relevant to this action, acting under the auspices of the MCC and Hamm.  The Mayor appoints the Commissioner of the Police Department with the advice and consent of the City Council.  The City Council holds hearings on Police Department policy and sets the Police Department budget.  The BPD is sued in its official capacity.

34.    Defendant Former Police Commissioner Leonard D. Hamm (*hereinafter* "Hamm"), was, at all times relevant to this action, the duly appointed and acting police commissioner with The BPD. He is sued in his official and individual capacity.

35.    Defendant the Mayor and City Council of Baltimore City (*hereinafter* "MCC"), a municipal corporation was, at all times relevant to this action, a governmental entity within the meaning of the federal and state constitutions.

36.    Defendant Col. Deborah Owens (*hereinafter* "Owens"), was, at all times relevant to this action, a duly appointed and acting police officer with the rank of colonel in the BPD. As a police officer she was, at all times herein relevant, acting within the scope of her employment and under color of state law.  She is sued in her official and individual capacity.

37. Defendants John Does 1-5 were, at all times relevant to this action, duly appointed and acting police officers with the BPD. As police officers they were, at all times herein relevant, acting within the scope of their employment and under color of state law. They are sued in their official and individual capacity.

38. Defendants John Does 6-10 were, at all times relevant to this action, duly appointed and acting police officers with the BPD, serving in supervisory positions. As police officers they were, at all times herein relevant, acting within the scope of their employment and under color of state law. They are sued in their official and individual capacity.

## IV. Factual Allegations

### A. Background

39. In July of 2005, the MCC, the BPD, Hamm, Owens and/or other Unknown Supervisors, created two SET units, one to work on the east side of the city and one to work on the west side of the city.

40. Each SET had approximately thirty officers who were organized into smaller units led by a sergeant.

41. According to Hamm's 2005 Annual Report of the Police Department, "[a]t the direction of the Chief of Patrol this force was deployed in a rapid manner to respond to emerging violent crime problems throughout Baltimore. In 2005, SET's East and Northwest teams alone affected over 7,000 arrests (the majority being drug and nuisance cases), seized 266 guns with 141 handgun violations...."

42. Upon information and belief, members of the SET units normally work in plainclothes, and patrol in unmarked vehicles.

43. The command structure of the SET units is different from that of other special units in the BPD. Namely, where as other special units, such as flex squads, are supervised by and under the command of each of the nine police districts in the BPD and their commanders, the SET units are directly overseen by the Chief of Patrol. At all times relevant to this action office, Owens, and/or other Unknown Supervisors (John Does 6-10), served as the Chief of Patrol.

44. Owens and/or Unknown Supervisors (John Does 6-10), acting on behalf of, under the auspices of and as agents, servants and/or employees of the BPD, Hamm and/or the MCC supervised a SET unit, to operate in the east side of the city, in which Harris was sergeant. This SET unit is referred to as SET 'B' squad (*hereinafter*, "SET 'B' squad").

45. Harris was the immediate supervisor of the SET 'B' squad, in which he both participated in on-street police activities and oversaw the on-street police activities of several officers under his command, including, but not necessarily limited to, Moss, Rodriguez, Preston, Roles, Shields, Washington and/or other members of the SET 'B' squad (John Does 1-5), whose identities are currently unknown to the Plaintiffs (*hereinafter*, "Unknown Members of the SET 'B' squad").

46. During its existence, the SET 'B' squad, by and through its members, including, but not necessarily limited to Harris, Moss, Rodriguez, Preston, Roles, Shields, Washington and/or other Unknown Members of the SET 'B' squad (John Does 1-5), engaged in a series of improper, illegal and unconstitutional acts and

omissions involving numerous individuals in Baltimore City, including the Plaintiffs in this case, which can be characterized as nothing but rogue police work.

47. The improper, illegal and unconstitutional acts and omissions, which are set forth *infra* at ¶¶ 51-181, amounted to a pattern and practice of police action which was sanctioned, approved and/or tolerated by the BPD, Hamm, the MCC, Owens and/or other Unknown Supervisors (John Does 6-10).

48. At all times herein relevant, the members of the SET 'B' squad, including, but not necessarily limited to Harris, Moss, Rodriguez, Preston, Roles, Shields, Washington and/or other Unknown Members of the SET 'B' squad (John Does 1-5), were acting as agents, servants, and/or employees of the BPD, Hamm and/or the MCC.

49. At all times herein relevant, the members of the SET 'B' squad, including, but not necessarily limited to Harris, Moss, Rodriguez, Preston, Roles, Shields, Washington and/or other Unknown Members of the SET 'B' squad (John Does 1-5), committed acts and/or omissions while in the course of and in furtherance of their employment for BPD, Hamm, and/or the MCC.

50. Emblematic, but not comprehensive, of the improper, illegal and unconstitutional acts and omissions of the SET 'B' squad, by and through its members, including, but not necessarily limited to Harris, Moss, Rodriguez, Preston, Roles, Shields, Washington and/or other Unknown Members of the SET 'B' squad (John Does 1-5), are the incidents involving the Plaintiffs in this case, which are set forth *infra*:

B.   The Experiences of the Plaintiffs and Other Individuals in Baltimore City

### 1. The Kemp Incident

51. On or about November 2, 2005 at approximately 9:50 p.m. at or near the 400 block of Clinton Street in Baltimore, Maryland, Kemp was lawfully operating a motor vehicle in which Cozart was riding in the passenger seat.

52. At this time Harris, Moss, Rodriguez, Preston, Roles, and/or other Unknown Members of the SET 'B' squad (John Does 1-5), who were dressed in plain-clothes and driving an unmarked vehicle, conducted a traffic stop of the automobile being operated by Kemp and occupied by Cozart.

53. This traffic stop was not supported by probable cause, reasonable suspicion that criminal activity was afoot or warrant. The real purpose for the stop was to harass and commit other unlawful acts, including numerous constitutional violations, against Kemp and Cozart.

54. Harris, Moss, Rodriguez, Preston, Roles, and/or other Unknown Members of the SET 'B' squad (John Does 1-5), in an unlawful, improper, unconstitutional manner and without a warrant, probable cause or reasonable suspicion, continued to detain Kemp and Cozart for the traffic stop for a period longer than necessary to complete the traffic stop.

55. Next, Harris, Moss, Rodriguez, Preston, Roles, and/or other Unknown Members of the SET 'B' squad (John Does 1-5), unlawfully, improperly, unconstitutionally and without a warrant, probable cause or reasonable suspicion that criminal activity was afoot, conducted a thorough search of the interior of the vehicle, including using a screw driver to uncover the center console.

56. After, and only after, searching the interior of the vehicle, Harris, Moss, Rodriguez, Preston, Roles, and/or other Unknown Members of the SET 'B' squad (John Does 1-5) requested a K-9 unit in an attempt to establish a post-hoc justification for their illegal, unlawful, and improper search.

57. During this elongated traffic stop, Harris, Moss, Rodriguez, Preston, Roles, and/or other Unknown Members of the SET 'B' squad (John Does 1-5) unlawfully, improperly, unconstitutionally and without a warrant, probable cause or reasonable suspicion searched and seized the persons of Kemp and Cozart.

58. Thereafter, Harris, Moss, Rodriguez, Preston, Roles, and/or other Unknown Members of the SET 'B' squad (John Does 1-5) unlawfully, improperly, unconstitutionally and without a warrant, probable cause or reasonable suspicion seized Kemp's keys and other items and obtained Kemp's home address for improper purposes.

59. Next, members of the SET 'B' squad departed from the scene of the traffic stop and drove to Kemp's residence at 536 N. Highland Street, where they unlawfully, improperly, unconstitutionally and without a warrant, probable cause or reasonable suspicion used Kemp's keys to gain entry into the residence.

60. At this time, Mrs. Rice and Ms. Kemp, Kemp's mother and sister, respectively, who had been alerted that something was amiss at Kemp's residence, went to Kemp's residence to check on the situation.

61. While outside the residence, Mrs. Rice saw several individuals walking around inside and noticed that these individuals, dressed in dark clothing, had "hoodies" pulled over their heads.

62. Suspecting that these individuals had broken-in to the residence, Ms. Kemp called 911.

63. Once inside the residence, Harris, Moss, Rodriguez, Preston, Roles, and/or other Unknown Members of the SET 'B' squad (John Does 1-5) unlawfully, improperly, unconstitutionally and without a warrant, probable cause or reasonable suspicion that criminal activity was afoot, searched the residence and seized items therein, including money in the amount of twenty eight thousand dollars.

64. This money was the proceeds from a worker's compensation claim that Kemp had recently settled.

65. During the course of their illegal, unlawful, and improper search of the residence, Harris, Moss, Rodriguez, Preston, Roles, and/or other Unknown Members of the SET 'B' squad (John Does 1-5), unlawfully, improperly, unconstitutionally and without a warrant, probable cause or reasonable suspicion that criminal activity was afoot, detained Mrs. Rice and Ms. Kemp and searched and seized their persons.

66. During their detention, Mrs. Rice and Ms. Kemp did not have any inkling that the individuals in the dark sweat suits were police officers, but rather feared for their lives, believing that the individuals were going to kill them.

67. During the detention, Harris, Moss, Rodriguez, Preston, Roles, and/or other Unknown Members of the SET 'B' squad (John Does 1-5) refused to permit Ms. Rice and Ms. Kemp to leave the premises, refused to allow them to use the restroom, directed vulgar language towards them, harassed them, and otherwise treated them wrongly and improperly.

68.   Harris, Moss, Rodriguez, Preston, Roles, and/or other Unknown Members of the SET 'B' squad (John Does 1-5) then departed from the residence.

69.   Thereafter, Harris, Moss, Rodriguez, Preston, Roles, and/or other Unknown Members of the SET 'B' squad (John Does 1-5) contributed to the drafting and filing criminal charges, which were signed by Moss, against Kemp.

70.   These charges were based on information that Harris, Moss, Rodriguez, Preston, Roles, and/or other Unknown Members of the SET 'B' squad (John Does 1-5), knew to be false, groundless, and based upon improper searches and seizures and were made for the purpose of, among other things, covering up their wrongful, unlawful and improper conduct.

71.   Specifically, the Application for Statement of Charges contained numerous intentionally false, misleading, and inaccurate statements and omissions, including, but not limited to, the assertion that when a K-9 unit arrived, a dog trained in gun detection had a "positive response" for a handgun.

72.   In other words, Harris, Moss, Rodriguez, Preston, Roles, and/or other Unknown Members of the SET 'B' squad (John Does 1-5) sought to justify the search of the interior of the vehicle by claiming that a trained police dog alerted the officers to the handgun.  In reality, however, Rodriguez requested a complaint number for a handgun violation at least twenty minutes before the police dog unit arrived.

73.   On or about September 18, 2006, the charges against Kemp were entered *nolle prosequi*.

2.   The Franklin Incident

74.   On or about October 28, 2005 commencing at 9:30 p.m. at or near 2709 Kirk Avenue, Franklin was lawfully operating and had parked a vehicle outside of his sister's house and went inside, leaving Brice and Bazemore in the vehicle.

75.   At this time and place, Harris, and/or several other Unknown Members of the SET 'B' squad (John Does 1-5), who were dressed in plain-clothes and driving an unmarked vehicle, approached the vehicle occupied by Brice and Bazemore and unjustifiably drew weapons and pointed them at Brice and Bazemore, despite the fact that Brice and Bazemore had not violated any laws and posed no threat to the members of the SET 'B' squad.

76.   Harris, and/or several other Unknown Members of the SET 'B' squad (John Does 1-5), then unlawfully, improperly, unconstitutionally and without a warrant, probable cause or reasonable suspicion that criminal activity was afoot, searched and seized the persons of, detained, and seized items from Brice and Bazemore.

77.   Harris, and/or several other Unknown Members of the SET 'B' squad (John Does 1-5), then unlawfully, improperly, unconstitutionally and without a warrant, probable cause or reasonable suspicion that criminal activity was afoot, conducted a thorough search of the interior of the vehicle.

78.   Thereafter, Harris, and/or several other Unknown Members of the SET 'B' squad (John Does 1-5), among other things, unlawfully, improperly, unconstitutionally and without a warrant or probable cause, broke through the door to 2709 Kirk Avenue and thereby entered the residence.

79.   Next, Harris, and/or several other Unknown Members of the SET 'B' squad (John Does 1-5), unjustifiably drew weapons and pointed them at Franklin, Roberts

18

and Moody, all of whom were inside the house behaving in a lawful and proper manner.

80.  Harris, and/or several other Unknown Members of the SET 'B' squad (John Does 1-5), then, unlawfully, improperly, unconstitutionally and without a warrant or probable cause, searched and seized Franklin, Roberts and Moody.

81.  At this point, Harris, and/or several other Unknown Members of the SET 'B' squad (John Does 1-5), brought Brice and Bazemore inside the residence where they unlawfully, improperly, unconstitutionally and without a warrant or probable cause, detained them along with Franklin, Roberts, and Moody.

82.  During the detention of Brice, Bazemore, Franklin, Roberts, and Moody, Harris, and/or several other Unknown Members of the SET 'B' squad (John Does 1-5) searched the residence, seized items, including money, from the residence, and seized items, including keys, from Franklin, Roberts, Moody, Brice and Bazemore.

83.  During this time, one of the members of the SET 'B' squad struck Roberts in the face.

84.  Thereafter, members of the SET 'B' squad placed Franklin, Roberts, Moody and Bazemore, still in handcuffs, in the aforementioned van where they were not permitted to wear the seat belts.

85.  Harris then got into the driver's seat of the van and drove in an extremely reckless, dangerous, unlawful and improper manner through the streets of Baltimore, eventually arriving at the Southeastern District.

86.  Franklin later realized that after Harris had driven the van, the navigation system from the van was missing.

19

87. Brice was placed in a marked car and also transported to the Southeastern District.

88. At the Southeastern District Franklin, Roberts, Moody, Brice and Bazemore were, among other things, unlawfully, improperly, unconstitutionally and without a warrant or probable cause, placed in holding cells where they were improperly searched, seized, ridiculed and detained.

89. Thereafter, Harris and one of the other aforementioned SET 'B' squad members departed from the Southeastern District and drove to the residence of Franklin and Fair (Franklin's mother) at 511 East 43rd Street, apartment 2B.

90. At the residence, Harris and one of the other aforementioned SET 'B' squad members, among other things, unlawfully, improperly, unconstitutionally and without a warrant or probable cause used Franklin's keys to gain entry into the residence, searched the residence, seized items, including money, from the house, detained Fair in the residence, searched and seized Fair, and otherwise engaged in unconstitutional, unlawful, improper, wrongful and tortious conduct.

91. Thereafter, Harris, Shields, Rodriguez, Roles, Preston, Washington, and/or other Unknown Members of the SET 'B' squad (John Does 1-5) contributed to the drafting and filing criminal charges, which were signed by Preston, against Franklin, Moody, Brice, Bazemore and Roberts.

92. These charges were based on information that Harris, Moss, Rodriguez, Preston, Roles, and/or other Unknown Members of the SET 'B' squad (John Does 1-5) knew to be false, groundless, and based upon improper searches and seizures and

were made for the purpose of, among other things, covering up their wrongful, unlawful and improper conduct.

93. Thereafter, on September 21, 2006 the charges against Franklin were entered *nolle prosequi*; on January 26, 2006 the charges against Roberts and Bazemore were placed on the STET docket; on January 17, 2006 the charges against Brice were placed on the STET docket; and on or about May 24, 2006 Moody was adjudicated Not Guilty.

### 3.   The Hines Incident

94. On or about September 12, 2005 at approximately 6:10 p.m. at or near the 5600 block of Winner Avenue in Baltimore, Maryland, Hines was lawfully operating a motor vehicle, at which time Harris, Preston, Rodriguez, and/or other Unknown Members of the SET 'B' squad (John Does 1-5), who were dressed in plain-clothes and driving an unmarked vehicle, conducted a traffic stop of an automobile being operated by Hines.

95. This traffic stop was not supported by probable cause, reasonable suspicion that criminal activity was afoot or warrant.

96. During this traffic stop, Harris, Preston, Rodriguez, and/or Unknown Members of the SET 'B' squad (John Does 1-5) pointed their gun(s) at Hines without proper legal justification.

97. Harris, Preston, Rodriguez, and/or other Unknown Members of the SET 'B' squad (John Does 1-5), in an unlawful, improper, unconstitutional manner and without a warrant, probable cause or reasonable suspicion, continued to detain

Hines for the traffic stop for a period longer than necessary to complete the traffic stop.

98.   Next, Harris, Preston, Rodriguez, and/or other Unknown Members of the SET 'B' squad (John Does 1-5), unlawfully, improperly, unconstitutionally and without a warrant, probable cause or reasonable suspicion that criminal activity was afoot, conducted a thorough search of the interior of the vehicle.

99.   During this elongated traffic stop, Harris, Preston, Rodriguez, and/or other Unknown Members of the SET 'B' squad (John Does 1-5), searched and seized the person of Hines.

100.  Thereafter, Harris, Preston, Rodriguez, and/or other Unknown Members of the SET 'B' squad (John Does 1-5), drove Hines' vehicle in a reckless manner, without his consent or permission, while he was detained in the back seat, and otherwise engaged in unconstitutional, unlawful, improper, wrongful and tortious conduct.

101.  After driving Hines around, Harris, Preston, Rodriguez, and/or other Unknown Members of the SET 'B' squad (John Does 1-5), took Hines out of the car, sat him on the curb and, unlawfully, improperly, unconstitutionally and without a warrant, probable cause or reasonable suspicion that criminal activity was afoot, searched the interior of the vehicle.

102.  The search of the vehicle, however, produced negative results for illegal contraband.

103.  Thereafter, Harris, Preston, Rodriguez and/or other members of the aforementioned the SET 'B' squad, had a private discussion out of Hines' hearing.

104. They then departed from the scene, returned thirty to forty minutes later with a bag of marijuana, and falsely claimed that the Hines was in possession of this marijuana.

105. Hines vehemently denied possessing, or even knowing about, the marijuana, to which Harris replied, "Who do you think the judge will believe, me or you?"

106. Hines was then transported to the Southeast District, where he was detained for several hours, and then taken to Central Booking, where he remained for several days.

107. Thereafter, Harris, Preston, Rodriguez, and/or other Unknown Members of the SET 'B' squad (John Does 1-5), contributed to the drafting and filing criminal charges, which were signed by Preston, against Hines.

108. These charges were based on information that Harris, Preston, Rodriguez, and/or other Unknown Members of the SET 'B' squad (John Does 1-5) knew to be false, groundless, and based upon improper searches and seizures and were made for the purpose of, among other things, covering up their wrongful, unlawful and improper conduct.

109. Thereafter, on February 16, 2006 the charges against Hines were placed on the STET docket.

### 4. The Ford Incident

110. On or about at approximately 10:30 p.m. on March 19, 2006 at or near 235 N. Lakewood Avenue in Baltimore, Maryland, Ford was lawfully operating a motor vehicle, at which time Harris, Moss, Shields, and/or other Unknown Members of the

SET 'B' squad (John Does 1-5), who were dressed in plain-clothes and driving an unmarked vehicle, conducted a traffic stop of an automobile being operated by Ford.

111. This traffic stop was not supported by probable cause, reasonable suspicion that criminal activity was afoot or warrant. The real purpose for the stop was to harass and commit other unlawful acts, including numerous constitutional violations, against Ford.

112. Harris, Moss, Shields, and/or other Unknown Members of the SET 'B' squad (John Does 1-5), in an unlawful, improper, unconstitutional manner and without a warrant, probable cause or reasonable suspicion, continued to detain Ford for the traffic stop for a period longer than necessary to complete the traffic stop.

113. Next, Harris, Moss, Rodriguez, Preston, Roles, and/or other Unknown Members of the SET 'B' squad (John Does 1-5) unlawfully, improperly, unconstitutionally and without a warrant, probable cause or reasonable suspicion that criminal activity was afoot, conducted a thorough search of the interior of the vehicle.

114. During this elongated traffic stop, Harris, Moss, Shields, and/or other Unknown Members of the SET 'B' squad (John Does 1-5) unlawfully, improperly, unconstitutionally and without a warrant, probable cause or reasonable suspicion, searched and seized the person of Ford.

115. Thereafter, Harris, Moss, Shields, and/or other Unknown Members of the SET 'B' squad (John Does 1-5), unlawfully, improperly, unconstitutionally and without a warrant, probable cause or reasonable suspicion, forced and/or coerced Ford to get into a police vehicle for the purpose of driving to Ford's residence, located at 2108 Westfield Avenue, in order to conduct an unlawful search.

116. Harris, Moss, Shields, and/or other Unknown Members of the SET 'B' squad (John Does 1-5), then, with Ford in the police vehicle, departed from the scene of the traffic stop and drove to Ford's residence, where they unlawfully, improperly, unconstitutionally and without a warrant, probable cause or reasonable suspicion, gained entry into the residence, searched the residence, seized items, including money, from the residence, detained Ford, and otherwise engaged in unconstitutional, unlawful, improper, wrongful and tortious conduct.

117. The following day, Ford called to the Internal Investigation Division (*hereinafter* "IID") of the BPD to make an appointment for the purpose of making a complaint against Harris, Moss, Shields, and/or other Unknown Members of the SET 'B' squad (John Does 1-5) arising out of the March 19, 2006 incident. During this phone call, Ford provided preliminary information, including the names of the officers involved in the incident.

118. Ford's appointment with IID was scheduled for the following day, but Ford changed his mind because he was worried that he would get arrested if he went down to IID.

119. Thereafter, Harris, Moss, Shields, and/or other Unknown Members of the SET 'B' squad (John Does 1-5) contributed to the drafting and filing criminal charges, which were signed by Harris, against Ford.

120. These charges were based on information that Harris, Moss, Shields, and/or other Unknown Members of the SET 'B' squad (John Does 1-5) knew to be false, groundless, and based upon improper searches and seizures and were made for the

purpose of, among other things, covering up their wrongful, unlawful and improper conduct.

121. Ford was not arrested on March 19, 2006 at the scene, but rather at least one to two weeks later.

122. When Ford was arrested, Harris said to his fellow officers, "This is the little mother fucker who called Internal Affairs on us," or words to that effect.

123. Thereafter, in June of 2006 the charges against Ford were entered *nolle prosequi.*

124. In early September of 2006, the pattern of harassment against Ford continued when Shields, and other unknown members of the Baltimore Police Department, perhaps associated with the SET 'B' squad, approached Ford while he was lawfully walking at or near the intersection of Clinton and Noble Streets.

125. At this time, Shields, and other unknown members of the Baltimore Police Department, perhaps associated with the SET 'B' squad, among other things, unlawfully, improperly, unconstitutionally and without a warrant, probable cause, or reasonable suspicion, stopped, detained, and frisked Ford, engaged in other harassing behavior, and otherwise engaged in unconstitutional, unlawful, improper, wrongful and tortious conduct.

### 5.    The Cox Incident

126   On or about August 31, 2005 at approximately 11:15 p.m., Cox was lawfully operating a motor vehicle in which Clifton was riding in the passenger seat, at which time Rodriguez, Roles, Preston, and/or other Unknown Members of the SET 'B' squad (John Does 1-5), who were dressed in plain-clothes and driving an unmarked vehicle,

unlawfully, improperly, unconstitutionally and without a warrant or probable cause stopped said automobile. The real purpose for the stop was to harass, and commit other unlawful acts, including numerous constitutional violations, against Cox and Clifton.

127. Rodriguez, Roles, Preston, and/or other Unknown Members of the SET 'B' squad (John Does 1-5), in an unlawful, improper, unconstitutional manner and without a warrant, probable cause or reasonable suspicion, continued to detain Cox and Clifton for the traffic stop for a period longer than necessary to complete the traffic stop.

128. Shortly thereafter, Harris and Moss arrived on the scene and also engaged in the unlawful, improper and unconstitutional acts against Cox and Clifton.

129. Harris, Moss, Rodriguez, Roles, Preston, and/or other Unknown Members of the SET 'B' squad (John Does 1-5), unlawfully, improperly, unconstitutionally and without a warrant, probable cause or reasonable suspicion that criminal activity was afoot conducted a thorough search of the interior of the vehicle, and sought to access the trunk.

130. Rodriquez twice engaged the trunk release latch from the vehicle to open the trunk; each time, Cox unambiguously reaffirmed his refusal to permit a warrantless search of his vehicle by manually closing the trunk when Rodriguez engaged the release latch, thereby exercising his constitutional right not to grant consent to a warrantless search of the trunk.

131. As this was occurring, Harris witnessed Rodriguez violate Cox's rights and took no action to stop this unlawful conduct; rather, Harris, and/or other members of the SET 'B' squad, admonished Cox, "You better not touch the trunk no more."

132. Rodriguez then engaged the release latch a third time and thereby unlawfully accessed the trunk.

133. During this elongated traffic stop, Harris, Moss, Rodriguez, Roles, Preston, and/or other Unknown Members of the SET 'B' squad (John Does 1-5), unlawfully, improperly, unconstitutionally and without a warrant, probable cause or reasonable suspicion searched and seized the persons of Cox and Clifton and seized items, including money, from the Cox and/or Clifton.

134. Thereafter, Harris and/or other members of the SET 'B' squad took Cox's keys, departed from the scene of the traffic stop and drove to the address indicated on Cox's driver's license.

135. Cox, however, had recently moved and had not updated his address with the M.V.A.

136. Members of the SET 'B' squad, thus, ended up not where they intended, at Cox's address, but rather at the address of unknown persons; at this address members of the SET 'B' squad used the key in an attempt to gain entry.

137. Realizing that they were at the incorrect address, Harris and/or other members of the SET 'B' squad, called back to one of the members of the SET 'B' squad at the scene of the traffic stop and angrily admonished Cox for allowing them to descend upon the incorrect address.

138.  Members of the SET 'B' squad thereafter obtained Cox's correct address – 2810 Evergreen Avenue – where he was residing with his mother and his nephew, Michael Carter.

139.  Members of the SET 'B' squad then drove to 2810 Evergreen Avenue.

140.  At the Evergreen Avenue residence, members of the aforementioned the SET 'B' squad, among other things, unlawfully, improperly, unconstitutionally and without a warrant or probable cause used Cox's keys to gain entry into the residence, searched the residence, seized items, including money, from the house, detained Cox's mother and Carter, searched and seized the persons of Cox's mother and Carter, and otherwise engaged in unconstitutional, unlawful, improper, wrongful and tortious conduct.

141.  Thereafter, Harris, Moss, Rodriguez, Roles, Preston, and/or Unknown Members of the SET 'B' squad (John Does 1-5) contributed to the drafting and filing criminal charges, which were signed by Preston, against Cox and Clifton.

142.  These charges were based on information that Harris, Moss, Rodriguez, Roles, Preston, and/or other Unknown Members of the SET 'B' squad (John Does 1-5) knew to be false, groundless, and based upon improper searches and seizures and were made for the purpose of, among other things, covering up their wrongful, unlawful and improper conduct.

143.  Thereafter, on September 19, 2006 the charges against Cox and Clifton were entered *nolle prosequi.*

### 6.     The Bridges Incident

144. In the spring of 2006 at approximately mid to late afternoon at or near the intersection of Pulaski Highway and Highland Avenue in Baltimore, Maryland, Bridges was lawfully operating a motor vehicle, at which time Harris, Shields, and/or other Unknown Members of the SET 'B' squad (John Does 1-5), who were dressed in plain-clothes and driving an unmarked vehicle, conducted a traffic stop of an automobile being operated by Bridges.

145. This traffic stop was not supported by probable cause, reasonable suspicion that criminal activity was afoot or warrant. The real purpose for the stop was to harass and commit other unlawful acts, including numerous constitutional violations, against Bridges.

146. During this traffic stop, Harris, Shields and/or other Unknown Members of the SET 'B' squad (John Does 1-5) pointed their gun(s) at Bridges without proper legal justification.

147. Next, Harris, Shields and/or other Unknown Members of the SET 'B' squad (John Does 1-5), threw Bridges to the ground and questioned him in an extremely aggressive and accusatory manner.

148. Harris, Shields and/or other Unknown Members of the SET 'B' squad (John Does 1-5), then situated Bridges on the double yellow line in the middle of Pulaski Highway for several minutes where his safety was seriously endangered.

149. Harris, Shields, and/or other Unknown Members of the SET 'B' squad (John Does 1-5), in an unlawful, improper, unconstitutional manner and without a warrant, probable cause or reasonable suspicion, continued to detain Bridges for the traffic stop for a period longer than necessary to complete the traffic stop.

150. Next, Harris, Shields, and/or other Unknown Members of the SET 'B' squad (John Does 1-5) unlawfully, improperly, unconstitutionally and without a warrant, probable cause or reasonable suspicion that criminal activity was afoot conducted a thorough search of the interior of the vehicle.

151. During this elongated traffic stop, Harris, Shields and/or other Unknown Members of the SET 'B' squad (John Does 1-5), searched and seized the person of Bridges.

152. After being detained for no lawful purpose, Bridges was released without charges filed against him.

### 7. The Williams Incident

153. In January of 2006, Williams was in a barbershop in Baltimore City at or near Bel Air Road.

154. While in the barbershop, Williams had a discussion with a woman, who he later learned was Moss's wife.

155. Thereafter, Williams left the barbershop and went outside to the building, at which time he saw the woman sitting inside a truck with Moss.

156. The woman was pointing at Williams as she was talking to Moss, an obvious indication that they were talking about Williams.

157. Moss, who was in plain clothes, stepped out of the truck for a couple of seconds. He then got back into the truck where Williams saw a motion consistent with Moss reaching for his waist area.

158. Moss then got out of the truck, approached Williams and said, "Are you disrespecting my wife?" or words to that effect.

159. Williams stated that he did not even know Moss's wife. In response to this, the woman, later identified as Moss's wife, got out of the truck and said, "Yes you do," or words to that effect.

160. Moss then told his wife to get back into the truck. He then stated to Williams, in a threatening manner, "I am going to see you again. This is a small fucking world," or words to that effect.

161. Approximately one to two months later, Williams was driving from work to church, located at or near the intersection of Lafayette Avenue and Aiken Street.

162. At this same time and location, Moss, along with two other officers, one believed to be Harris and the other whose identity is unknown to Williams at this time, were in the midst of conducting a search and pat-down of several individuals.

163. Williams then brought his vehicle to a stop sign near to where the officers were conducting a search and pat-down of several individuals and was looking over to see what was happening.

164. The officer believed to be Harris then ordered Williams to bring his car to the side of the road.

165. Harris then questioned Williams about why he was looking at the police scene and asked if he had any guns in the truck. Williams said no.

166. Harris then asked if he could search Williams' vehicle. Williams asked, "Do I have any say in the matter?" Harris said no, so Williams said "go ahead."

167. Harris then ordered Williams to get out of the truck and sit on the curb. Harris then searched the truck.

168. While Williams was sitting on the curb, Moss recognized Williams from their prior incident and ordered Williams to follow him.

169. At this point Williams did not recognize or remember Moss.

170. Moss then said, "Bitch, didn't I tell you I would see you again." Hearing this, Williams remembered Moss.

171. Moss, then lost control of his temper, and started to yell at and berate Williams. He barraged him with a series of insults and verbal abuse, calling him things like a "fucking whore," and a "bitch." Moss also stated that he was going to "fucking humiliate" Williams.

172. At this point, Moss was so worked up that he started to poke Williams in his face; specifically, he directed his finger to Williams' eyes.

173. Moss' tirade against Williams lasted approximately ten minutes, during which time he continued to verbally abuse Williams and poke at his eye.

174. Thereafter, Moss threatened, "next time I see you, it isn't going to be like this."

175. Williams then walked back to his truck and drove away. No charges were filed against him.

176. As a result of the Defendants' wrongful conduct set forth in ¶¶ 51-176, all of the Plaintiffs discussed *supra* sustained other economic and non-economic damages.

### 8. Incidents Involving Individuals not a Party to this Suit

177. Upon information and belief, in addition to the Plaintiffs in this Complaint, numerous other individuals were subjected to the improper, illegal and

unconstitutional acts and omissions of Harris, Moss, Rodriguez, Preston, Roles, Shields, Washington, and/or other Unknown Members of the SET 'B' squad.

178.    The improper, illegal, and unconstitutional acts and omissions of Harris, Moss, Rodriguez, Preston, Roles, Shields, Washington, and/or other Unknown Members of the SET 'B' squad include, but is not necessarily limited to, the following:

a.    A March 2006 arrest of a Todd Little by members of the SET 'B' squad, for alleged possession of marijuana. In this case, the charging document, completed by Rodriguez, alleged that Little was stopped for operating a vehicle having "dark tint" and that the officers smelt a strong odor of marijuana coming from the car. The allegation about the dark tinted windows was false, as the windows were not tinted. The allegation about the strong odor of marijuana coming from the car was likewise false. The charges in this case were entered *nolle prosequi* on July 26, 2006.

b.    A May 2006 arrest of an Antonio E. Walker by members of the SET 'B' squad, in which he was charged with possession and possession with intent to distribute C.D.S. Moss, who participated in and/or contributed to the arrest and charging of Walker made numerous false statements and allegations relating to the arrest and charging. The charges in this case were dismissed on July 26, 2006.

c.    A March 2006 arrest of a Glen Craig by members of the SET 'B' squad, in which he was charged with possession and possession with intent to distribute C.D.S. Shields, who participated in and/or contributed to the arrest and charging of Craig, made numerous false statements and allegations relating to the arrest and charging. Other members of the SET 'B' squad, including, but not necessarily limited to Harris and Washington, participated in and/or contributed to the arrest and

34

charging of Craig. The charges in this case were entered *nolle prosequi* on July 26, 2006.

d. An April 2006 arrest of an Antoine Parms by members of the SET 'B' squad, in which he was charged with two counts of possession of CDS. Washington and Harris, who participated in and/or contributed to the arrest and charging of Parms, made numerous false statements and allegations relating to the arrest and charging of Parms. The charges in this case were entered *nolle prosequi* on May 10, 2006.

179. Additionally, upon information and belief, there are dozens of other similar cases in which individuals were subjected to the improper, illegal, and unconstitutional acts and omissions of Harris, Moss, Rodriguez, Preston, Roles, Shields, Washington, and/or other Unknown Members of the SET 'B' squad (John Does 1-5).

180. A review of the SET 'B' squad's police activities during the period commencing in July of 2005 reveals, and at the time these police activities were occurring should have revealed to any reasonable supervisor within the BPD, that these police activities were improper, unconstitutional and illegal.

181. Such a review the SET 'B' squad's police activities commencing in July of 2005 demonstrates the following:

(a) A noticeable similarity of the facts contained in the SET 'B' squad's statements of probable cause in which it can only be concluded that the statements of probable cause are fabricated and perjurious;

(b)    Atypically high instances of alleged equipment violations as a basis for vehicular stops;

(c)    Atypically high instances of allegations of plain view seizures of contraband in vehicles;

(d)    Atypically high instances of allegations of CDS dropsy;

(e)    Atypically high instances of foot pursuit of suspects into residences;

(f)    A noticeable pattern in which members of the SET 'B' squad execute entries into the residences of arrestees and relatives of arrestees under circumstances of highly suspect consent for entry or apparent lack thereof;

(g)    Seizures of CDS in disproportionately large quantities in light of the fact that most of the SET 'B' squad's arrests proceeded not from thoroughly developed investigations culminating in the execution of search and seizure warrants, but rather from single-day encounters with suspects that result in warrantless seizures;

(h)    Repeated instances in which physical evidence contradicted information in the statements of probable cause and other written reports, i.e. the claim of broken tail lights in two vehicles that were actually fully functional.

(i)    Repeated use of alleged confidential sources without any indication as to the bases upon which such sources are reliable.

(j)    A general pattern establishing a flagrant disregard of Fourth Amendment constraints and false reporting of facts and circumstances of the events leading up to the arrest of a particular target or suspect.

C.    The Illegal, Improper and Unconstitutional Policies, Practices, Customs and Usages of the BPD

182. Hamm and/or Unknown Supervisors (John Does 6-10), the BPD, and/or the MCC, jointly and severally, had a duty to establish, execute, implement, enforce, direct, supervise and/or control policies, customs, practices, usages, and procedures to be used by police officials of the BPD.

### 1. Policies

183. More specifically, Hamm, Owens, and/or Unknown Supervisors (John Does 6-10), the BPD, and/or the MCC, jointly and severally, had policymaking authority for the MCC with regard to the creation, staffing, monitoring, supervision, training, and disciplining of the SET 'B' squad.

184. Hamm, Owens, and/or Unknown Supervisors (John Does 6-10), the BPD, and the/or MCC, jointly and severally, exercised their policymaking authority by and through formal and informal *ad hoc* decisions regarding the creation, monitoring staffing, supervision, training, and disciplining of the SET 'B' squad.

185. Hamm, Owens, and/or Unknown Supervisors (John Does 6-10), the BPD, and the/or MCC, jointly and severally, carried out their policymaking responsibility regarding the SET 'B' squad with negligence, gross negligence, and/or deliberate indifference to the fact that SET 'B' squad was engaging in a widespread pattern and practice of unconstitutional conduct against individuals in Baltimore City.

186. Specifically, Hamm, Owens, and/or Unknown Supervisors (John Does 6-10), the BPD, and the MCC, jointly and severally:

    (a)    created the SET 'B' squad and placed Harris in, promoted Harris to, and/or retained Harris in a supervisory role in the SET 'B' squad when they knew of should have known (i) about prior instances of misconduct on Harris' behalf and (ii)

that Harris was unfit for the tasks, duties, and responsibilities as a sergeant supervisor of a SET unit and likely to commit constitutional violations against individuals in Baltimore City;

(b)    hired, promoted to, and/or retained in the SET 'B' squad, officers, including but not limited to, Moss, Rodriguez, Preston, Roles, Shields, Washington and/or other Unknown Members of the SET 'B' squad (John Does 1-5), when they knew of should have known that these officers were unfit for the tasks, duties, and responsibilities of a SET unit and likely to commit constitutional violations against individuals in Baltimore City;

(c)    acquiesced in, tolerated, and failed to adequately correct and remedy the wrongful, improper and unconstitutional acts and/or omissions of Harris and members of the SET 'B' squad, including but not limited Moss, Rodriguez, Preston, Roles, Shields, Washington and/or other Unknown Members of the SET 'B' squad (John Does 1-5), when they knew or should have that these shortcomings would likely result in the commission of constitutional violations against individuals in Baltimore City;

(d)    failed to properly and adequately supervise, discipline, train or re-train, and/or monitor members of the SET 'B' squad, including, but not necessarily limited to Harris, Moss, Rodriguez, Preston, Roles, Shields, Washington and/or other Unknown Members of the SET 'B' squad (John Does 1-5), when they knew or should have that these shortcomings would likely result in the commission of constitutional violations against individuals in Baltimore City; and,

(e)     otherwise maintained, executed, implemented and/or tolerated a persistent and widespread pattern and/or practice of police misconduct, including but not limited to the unconstitutional acts and/or omissions of the SET 'B' squad described *supra*, such that the persistent and widespread pattern and/or practice of police misconduct amounted to an unofficial custom or policy of the SET 'B' squad to engage in unconstitutional conduct.

187.  Harris' prior misconduct includes, but is not necessarily limited to, a 1996 incident in which an Albert McKoy alleged that during an arrest Officers Curtis Calhoun (*hereinafter* "Calhoun") and Harris engaged in police misconduct.

188.  The nature of the alleged misconduct is that Harris and Calhoun, among other things, subjected McKoy to excessive force during the course of his arrest.

189.  In brief, as a result of the interactions between McKoy and Harris and Calhoun, McKoy suffered a crushed globe (i.e. eyeball) which he alleged resulted from Calhoun's striking him in the eye.

190.  Both Harris, who signed and/or completed an incident report, statement of probable cause and use of force report, and Calhoun, who completed a use of force report, wrote that McKoy sustained his injury as a result of all three (Harris, Calhoun and McKoy) losing their balance and falling to the ground.

191.  Specifically, Harris reported, "During the struggle to gain control of Mr. McKoy, these officers lost out balance and fell to the ground with McKoy being on the bottom striking his head on the ground."

192.  The Internal Investigation Division's (*hereinafter* "IID") investigation into the matter revealed that one of the paramedics reporting to the scene of the incident

recalled looking for something on the ground where McKoy ended up, but did not see any glass or broken bottles; other information obtained in the IID investigation, including medical records of McKoy, would likewise illustrate that McKoy could not and would not have lost his eye by falling.

193. Any reasonable investigator or supervisor reviewing the investigation into McKoy's allegations of excessive force would have concluded that McKoy could not have lost his eye by falling in the manner described by Harris and Calhoun and, therefore, that Harris and Calhoun falsely reported the incident.

194. Nevertheless, the IID did not sustain the allegations of McKoy against Harris and Calhoun and thus, upon information and belief, the latter two were not subject to any sort of discipline, by IID or other supervisors within the BPD.

195. Upon information and belief, Harris has committed numerous other acts of misconduct including, but not limited to false reporting, excessive force, unlawful search and seizure and other constitutional violations.

196. Upon information and belief, in addition to the McKoy matter, Harris has been sued civilly at least two other times. These prior civil suits against Harris provided, or should have provided to a reasonable supervisor, notice that Harris' conduct as an officer was problematic and worthy of close scrutiny.

197. Upon information and belief, Hamm, Owens, and/or Unknown Supervisors (John Does 6-10), the BPD and the MCC failed to properly scrutinize Harris' prior conduct before placing in command of a SET unit.

198. Upon information and belief, adequate scrutiny of the backgrounds and ongoing job performances of Harris and the SET 'B' squad members would have led a

reasonable policymaker to conclude that the decision to hire, promote and retain Harris and the SET 'B' squad members would deprive the Plaintiffs of their constitutional rights.

## 2. Customs and Usages

199. Hamm, Owens, and/or Unknown Supervisors (John Does 6-10), the BPD, and the/or MCC, jointly and severally, knew or should have known that the SET 'B' squad was engaging in a pattern of unconstitutional, unlawful, improper and wrongful police misconduct, set forth more fully, *supra* at ¶¶ 51-181, which misconduct was widespread and pervasive.

200. The pattern of unconstitutional, unlawful, improper and wrongful police misconduct, set forth more fully, *supra* at ¶¶ 51-181, was so widespread and pervasive as to constitute a custom or usage with the force of law.

201. Although Hamm, Owens, and/or Unknown Supervisors (John Does 6-10), the BPD, and the/or MCC, jointly and severally, knew or should have known that this widespread pattern of unconstitutional searches and seizures, excessive force and false reporting, described *supra* at ¶¶ 51-181, was occurring, members of the SET 'B' squad were not properly monitored, supervised, disciplined or subjected to retraining by Hamm, Owens, and/or Unknown Supervisors (John Does 6-10), the BPD, and the/or MCC.

202. Hamm, Owens, and/or Unknown Supervisors (John Does 6-10), the BPD, and the/or MCC, jointly and severally, committed acts and omissions with negligence,

gross negligence and/or deliberate indifference to the widespread unconstitutional acts that were being committed by the SET 'B' squad; among other things, they:

(a) acquiesced in, condoned, tolerated, and failed to adequately correct and remedy the widespread pattern of unconstitutional conduct by the SET 'B' squad;

(b) failed to properly train or re-train the SET 'B' squad when they knew or should have known, based widespread pattern of unconstitutional conduct, that further training was necessary to prevent constitutional violations and that their continued adherence to then existing training policies was inadequate to protect the constitutional rights of individuals in Baltimore City;

(c) failed to properly and adequately supervise, discipline, and/or monitor members of the SET 'B' squad when they knew or should have known, based widespread pattern of unconstitutional conduct, that increased supervision, discipline and/or monitoring of the SET 'B' squad was necessary to prevent constitutional violations against individuals in Baltimore City;

(d) otherwise engaged in, or failed to engage in, other conduct that would have deterred and/or prevented the wrongful, improper, unconstitutional and illegal conduct of Moss, Rodriguez, Preston, Roles, Shields, Washington, and/or other Unknown Members of the SET 'B' squad.

203. As a result, members of the SET 'B' squad were caused and encouraged to believe they could commit unjustified, unreasonable and illegal searches, seizures, excessive force and false reporting, and that such conduct would in fact be permitted by Hamm, Owens, and/or Unknown Supervisors (John Does 6-10), the BPD and the/or MCC, to the extent that it has become the de facto policy and custom of

Hamm, Owens, and/or Unknown Supervisors (John Does 6-10), the BPD, and the/or MCC, to tolerate such misconduct by members of the SET 'B' squad.

204. As a result, Hamm, Owens, and/or Unknown Supervisors (John Does 6-10), the BPD, and the/or MCC have allowed a police culture to develop within the SET 'B' squad, including it members Harris, Moss, Rodriguez, Preston, Roles, Shields, Washington and/or other Unknown Members of the SET 'B' squad (John Does 1-5), in which engaging in wrongful, improper and illegal conduct violative of constitutional rights of individuals in Baltimore City became the normal accepted practice.

205. There was, at all times herein relevant, an affirmative causal link between the illegal, improper and/or unconstitutional policies, practices, customs and usages of Hamm, Owens, and/or Unknown Supervisors (John Does 6-10), the BPD and the/or MCC, such that these policies, practices, customs and usages rendered the constitutional violations of the SET 'B' squad reasonably foreseeable and likely to occur.

## C.    The Acts and/or Omissions of Supervisors

206. Upon information and belief, Owens, and/or other Unknown Supervisors (John Does 6-10), was the immediate commanding officer of the SET 'B' squad, in which Harris, Moss, Rodriguez, Preston, Roles, Shields, Washington and/or other Unknown Members of the SET 'B' squad (John Does 1-5) were members.

207. Owens, and/or other Unknown Supervisors (John Does 6-10), had a duty to carry out her responsibilities without deliberate indifference to the aforementioned unconstitutional, improper and unlawful police practices, negligence, and/or gross

negligence and to ensure that the officers in her charge were not violating the constitutional rights of to individuals in Baltimore City, including the Plaintiffs in this case.

208.  Owens and/or other Unknown Supervisors (John Does 6-10) had actual or constructive knowledge that the members of the SET 'B' squad were engaging in persistent widespread and/or repeated misconduct conduct that posed a pervasive and unreasonable risk of constitutional injury to individuals in Baltimore City, such as the Plaintiffs in this case.

209.  The response of Owens, and/or other Unknown Supervisors (John Does 6-10), to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the offensive practices.

210.  Owens, and/or other Unknown Supervisors (John Does 6-10), with deliberate indifference to unconstitutional, improper and unlawful police practices, negligence, and/or gross negligence failed to carryout her supervisory duties in an adequate manner.  Namely, she:

    a.    placed Harris in, promoted Harris to, and/or retained Harris in a supervisory role in the SET 'B' squad when they knew of should have known (i) about prior instances of misconduct on Harris' behalf and (ii) that Harris was unfit for the tasks, duties, and responsibilities as a sergeant supervisor of a SET unit and likely to commit constitutional violations against individuals in Baltimore City;

b.     hired, promoted to, and/or retained in the SET 'B' squad officers, including but not limited to, Moss, Rodriguez, Preston, Roles, Shields and Washington when they knew of should have known that these officers were unfit for the tasks, duties, and responsibilities of a SET unit and likely to commit constitutional violations against individuals in Baltimore City;

c.     acquiesced in, tolerated, and failed to adequately correct and remedy the wrongful, improper and unconstitutional acts and/or omissions of Harris and members of the SET 'B' squad, including but not limited Moss, Rodriguez, Preston, Roles, Shields and Washington, when they knew or should have that these shortcomings would likely result in the commission of constitutional violations against individuals in Baltimore City;

d.     failed to properly and adequately supervise, discipline and/or monitor members of the SET 'B' squad, including, but not necessarily limited to Harris, Moss, Rodriguez, Preston, Roles, Shields and Washington, when they knew or should have that these shortcomings would likely result in the commission of constitutional violations against individuals in Baltimore City; and,

e.     otherwise maintained, executed, implemented and/or tolerated a persistent and widespread pattern and/or practice of police misconduct, including but not limited to the unconstitutional acts and/or omissions of the SET 'B' squad described *supra*, such that the persistent and widespread pattern and/or practice of police misconduct amounted to an unofficial custom or policy of the SET unit to engage in unconstitutional conduct.

     f.     otherwise engaged in, or failed to engage in, other supervisory conduct that would have deterred and/or prevented the wrongful, improper, unconstitutional and illegal conduct of Harris, Moss, Rodriguez, Preston, Roles, Shields, Washington, and/or other Unknown Members of the SET 'B' squad.

211.  There was, at all times herein relevant, an affirmative causal link between the inaction of Owens, and/or other Unknown Supervisors, and the particular constitutional injuries suffered by the Plaintiffs in this case.

212.  At all times herein relevant, Harris was a sergeant serving as the immediate supervisor of the SET 'B' squad, in which Moss, Rodriguez, Preston, Roles, Shields, Washington and/or other Unknown Members of the SET 'B' squad (John Does 1-5) were members.

213.  Harris had a duty to carry out his supervisory responsibilities without deliberate indifference to the aforementioned unconstitutional, improper and unlawful police practices, negligence, and/or gross negligence and to ensure that the officers in his charge were not violating the constitutional rights of individuals in Baltimore City, including the Plaintiffs in this case.

214.  Harris had actual and/or constructive knowledge that the SET 'B' squad members under his charge were engaged in persistent widespread and/or repeated misconduct conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the Plaintiffs in this case.

215. Harris' response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the offensive practices.

216. Harris, with deliberate indifference to unconstitutional, improper and unlawful police practices, negligence, and/or gross negligence failed to carryout his supervisory duties in an adequate manner. Namely, he:

a.     acquiesced in the wrongful, improper, unconstitutional and unlawful conduct of Moss, Rodriguez, Preston, Roles, Shields, Washington and/or other Unknown Members of the SET 'B' squad;

b.     failed to correct potential problems created by the conduct of Moss, Rodriguez, Preston, Roles, Shields, Washington, and/or other Unknown Members of the SET 'B' squad;

c.     failed to properly and adequately supervise Moss, Rodriguez, Preston, Roles, Shields, Washington, and/or other Unknown Members of the SET 'B' squad; and,

d.     otherwise engaged in, or failed to engage in, other supervisory conduct that would have deterred and/or prevented the wrongful, improper, unconstitutional and illegal conduct of Moss, Rodriguez, Preston, Roles, Shields, Washington, and/or other Unknown Members of the SET 'B' squad.

217.  There was, at all times herein relevant, an affirmative causal link between Harris' inaction, and the particular constitutional injuries suffered by the Plaintiffs in this case.

## V. CAUSES OF ACTION

### COUNT 1 (VIOLATION OF 42 U.S.C. § 1983 – FOURTH and FOURTEENTH AMENDMENTS – BY ALL PLAINTIFFS AGAINST DEFENDANTS HARRIS, MOSS, RODRIGUEZ, PRESTON, ROLES, SHIELDS AND WASHINGTON – DIRECT LIABILITY)

218.  Plaintiffs incorporate herein the preceding allegations of this Complaint.

219.  This Count is brought by all of the Plaintiffs against Harris, Moss, Rodriguez, Preston, Roles, Shields, Washington, and/or other Unknown Members of the SET 'B' squad (John Does 1-5), jointly and severally.

210.  At all times relevant herein, Harris, Moss, Rodriguez, Preston, Roles, Shields, Washington, and/or other Unknown Members of the SET 'B' squad (John Does 1-5) were state actors and "persons" within the meaning of 42 U.S.C. § 1983 and their conduct was and is subject to 42 U.S.C. § 1983.

211.  At all relevant times herein, Plaintiffs had rights under the Fourth and Fourteenth Amendments not to have their persons or property unlawfully searched, seized, detained in an unreasonable manner, not to be deprived of their liberty without due process of law, and not to be summarily punished.

212.  Harris, Moss, Rodriguez, Preston, Roles, Shields, Washington, and/or other Unknown Members of the SET 'B' squad (John Does 1-5), acting under the color of

law, jointly and severally, deprived Plaintiffs of their clearly established and well-settled rights under the Fourth and Fourteenth Amendments of the U.S. Constitution not to have their persons or property unlawfully searched, seized, detained in an unreasonable manner, not to be deprived of their liberty without due process of law and not to be summarily punished.

213. It is clearly established now and was clearly established at the time of their actions that the conduct, patterns and practices of Harris, Moss, Rodriguez, Preston, Roles, Shields, Washington, and/or other Unknown Members of the SET 'B' squad (John Does 1-5) violated the Fourth and Fourteenth Amendments to the U.S. Constitution.

214. Harris, Moss, Rodriguez, Preston, Roles, Shields, Washington, and/or other Unknown Members of the SET 'B' squad (John Does 1-5), jointly and severally, subjected the Plaintiffs to these deprivations of their rights maliciously and/or by acting with reckless disregard for or deliberate indifference to whether the Plaintiffs' rights would be violated by their actions.

215. As a result of the aforementioned federal Constitutional violations, the Plaintiffs sustained economic and non-economic damages for the pain, suffering, humiliation, inconvenience, and embarrassment for the totality of events they were forced to endure.

### COUNT 2 (VIOLATION OF 42 U.S.C. § 1983 – FOURTH and FOURTEENTH AMENDMENTS – BY ALL PLAINTIFFS AGAINST DEFENDANTS THE BPD, THE MCC, HAMM, OWENS AND/OR OTHER UNKNOWN SUPERVISORS (JOHN DOES 6-10) – MUNICIPAL LIABILITY)

216. Plaintiffs incorporate herein the preceding allegations of this Complaint.

217. This Count is brought by all of the Plaintiffs against the BPD, the MCC, Hamm, Owens, and/or other Unknown Supervisors (John Does 6-10), jointly and severally.

218. At all times relevant herein, the BPD, the MCC, Hamm, Owens, and/or other Unknown Supervisors (John Does 6-10), were state actors and "persons" within the meaning of 42 U.S.C. § 1983 and their conduct was and is subject to 42 U.S.C. § 1983.

219. At all relevant times herein, Plaintiffs had rights under the Fourth and Fourteenth Amendments not to have their persons or property unlawfully searched, seized, detained in an unreasonable manner, not to be deprived of their liberty without due process of law, and not to be summarily punished.

220. The BPD, the MCC, Hamm, Owens, and/or other Unknown Supervisors (John Does 6-10), acting under the color of law, jointly and severally, deprived Plaintiffs of their clearly established and well-settled rights under the Fourth and Fourteenth Amendments of the U.S. Constitution not to have their persons or property unlawfully searched, seized, detained in an unreasonable manner, not to be deprived of their liberty without due process of law, and not to be summarily punished.

221. By establishing, executing, implementing, enforcing, directing, supervising and/or controlling policies, customs, practices, usages, and procedures to be used by

police officials of the BPD regarding the SET 'B' squad, as set forth *supra*, the BPD, the MCC, Hamm, Owens, and/or other Unknown Supervisors (John Does 6-10) acting under the color of law, jointly and severally, caused the Plaintiffs to be deprived of their clearly established and well-settled rights under the Fourth and Fourteenth Amendments of the U.S. Constitution not to have their persons or property unlawfully searched, seized, detained in an unreasonable manner, not to be deprived of their liberty without due process of law, and not to be summarily punished.

222. It is clearly established now and was clearly established at the time of their actions that the conduct, patterns and practices of the BPD, the MCC, Hamm, Owens, and/or other Unknown Supervisors (John Does 6-10) violated the Fourth and Fourteenth Amendments to the U.S. Constitution.

223. The BPD, the MCC, Hamm, Owens, and/or other Unknown Supervisors (John Does 6-10) subjected the Plaintiffs to these deprivations of their rights maliciously and/or by acting with reckless disregard for or deliberate indifference to whether the Plaintiffs' rights would be violated by their actions.

224. As a proximate result of the conduct of the BPD, the MCC, Hamm Owens, and/or other Unknown Supervisors (John Does 6-10), the Plaintiffs sustained economic and non-economic damages for the pain, suffering, humiliation, inconvenience, and embarrassment for the totality of events they were forced to endure.

## COUNT 3 (VIOLATION OF 42 U.S.C. § 1983 – FOURTH and FOURTEENTH AMENDMENTS – BY ALL PLAINTIFFS AGAINST DEFENDANTS DEBORAH OWENS AND OTHER UNKNOWN SUPERVISORS – SUPERVISOR LIABILITY)

225. Plaintiffs incorporate herein the preceding allegations of this Complaint.

226. This Count is brought by all of the Plaintiffs against Owens and/or other Unknown Supervisors (John Does 6-10), jointly and severally.

227. At all times relevant herein, Owens and/or other Unknown Supervisors (John Does 6-10) were state actors and "persons" within the meaning of 42 U.S.C. § 1983 and their conduct was subject to 42 U.S.C. § 1983.

228. At all relevant times herein, Plaintiffs had rights under the Fourth and Fourteenth Amendments not to have their persons or property unlawfully searched, seized, detained in an unreasonable manner, not to be deprived of their liberty without due process of law, and not to be summarily punished.

229. By failing to take proper supervisory action, Owens and/or other Unknown Supervisors (John Does 6-10), acting under the color of law, jointly and severally, caused the deprivation of the Plaintiffs of their clearly established and well-settled rights under the Fourth and Fourteenth Amendments of the U.S. Constitution not to have their persons or property unlawfully searched, seized, detained in an unreasonable manner, not to be deprived of their liberty without due process of law, and not to be summarily punished.

230. It is clearly established now and was clearly established at the time of their actions that the conduct, patterns and practices of the Defendants violated the Fourth and Fourteenth Amendments to the U.S. Constitution.

231. Owens and/or other Unknown Supervisors (John Does 6-10) subjected the Plaintiffs to these deprivations of their rights maliciously and/or by acting with reckless disregard for or deliberate indifference to whether the Plaintiffs' rights would be violated by their actions.

232. As a result of the aforementioned federal Constitutional violations, the Plaintiffs suffered severe and permanent physical and emotional injury, mental anguish, humiliation, embarrassment and other related injuries, losses and damages, including the cost of legal defense.

## COUNT 4 (VIOLATION OF 42 U.S.C. § 1983 – FOURTH and FOURTEENTH AMENDMENTS – BY ALL PLAINTIFFS AGAINST DEFENDANT HARRIS – SUPERVISOR LIABILITY)

233. Plaintiffs incorporate herein the preceding allegations of this Complaint.

234. This Count is brought by all of the Plaintiffs against Harris.

235. At all times relevant herein, Harris was a state actor and "person" within the meaning of 42 U.S.C. § 1983 and their conduct was and is subject to 42 U.S.C. § 1983.

236. At all relevant times herein, Plaintiffs had rights under the Fourth and Fourteenth Amendments not to have their persons or property unlawfully searched,

seized, detained in an unreasonable manner, not to be deprived of their liberty without due process of law, and not to be summarily punished.

237. By failing to take proper supervisory action, Harris, acting under the color of law, caused the deprivation of the Plaintiffs of their clearly established and well-settled rights under the Fourth and Fourteenth Amendments of the U.S. Constitution not to have their persons or property unlawfully searched, seized, detained in an unreasonable manner, not to be deprived of their liberty without due process of law, and not to be summarily punished.

238. It is clearly established now and was clearly established at the time of his actions that the conduct, patterns and practices of Harris violated the Fourth and Fourteenth Amendments to the U.S. Constitution.

239. Harris subjected the Plaintiffs to these deprivations of their rights maliciously and/or by acting with reckless disregard for or deliberate indifference to whether the Plaintiffs' rights would be violated by his actions.

240. As a result of the aforementioned federal Constitutional violations, the Plaintiffs suffered severe and permanent physical and emotional injury, mental anguish, humiliation, embarrassment and other related injuries, losses and damages, including the cost of legal defense.

COUNT 5 (VIOLATION OF 42 U.S.C. § 1983 – FOURTH and FOURTEENTH AMENDMENTS – BY ALL PLAINTIFFS AGAINST HARRIS, MOSS, RODRIGUEZ, PRESTON, ROLES, SHIELDS AND WASHINGTON -- BYSTANDER LIABILITY

241. Plaintiffs incorporate herein the preceding allegations of this Complaint.

242. This Count is brought by all of the Plaintiffs against Harris, Moss, Rodriguez, Preston, Roles, Shields, Washington, and/or other Unknown Members of the SET 'B' squad (John Does 1-5), jointly and severally.

243. Harris, Moss, Rodriguez, Preston, Roles, Shields, Washington, and/or other Unknown Members of the SET 'B' squad (John Does 1-5) were state actors and "persons" within the meaning of 42 U.S.C. § 1983 and their conduct was and is subject to 42 U.S.C. § 1983.

244. At all relevant times herein, Plaintiffs had rights under the Fourth and Fourteenth Amendments not to have their persons or property unlawfully searched, seized, detained in an unreasonable manner, not to be deprived of their liberty without due process of law, and not to be summarily punished.

245. During the incidents described *supra*, Harris, Moss, Rodriguez, Preston, Roles, Shields, Washington and/or other Unknown Members of the SET 'B' squad (John Does 1-5) observed and were confronted with illegal, unconstitutional and wrongful acts of each other.

246. By virtue of their position as police officers, Harris, Moss, Rodriguez, Preston, Roles, Shields, Washington and/or other Unknown Members of the SET 'B' squad (John Does 1-5) possessed the power to prevent the illegal, unconstitutional and wrongful acts they observed and were confronted with.

247. Harris, Moss, Rodriguez, Preston, Roles, Shields, Washington and/or other Unknown Members of the SET 'B' squad (John Does 1-5) chose not to act in a manner that would have prevented the illegal, unconstitutional and wrongful acts they observed and were confronted with, and thus may be deemed accomplices and treated accordingly.

248. As bystanders who took no corrective action, Harris, Moss, Rodriguez, Preston, Roles, Shields, Washington and/or other Unknown Members of the SET 'B' squad (John Does 1-5), acting under the color of law, jointly and severally, caused the deprivation of the Plaintiffs of their clearly established and well-settled rights under the Fourth and Fourteenth Amendments of the U.S. Constitution not to have their persons or property unlawfully searched, seized, detained in an unreasonable manner, not to be deprived of their liberty without due process of law, and not to be summarily punished.

249. It is clearly established now and was clearly established at the time of their actions that the conduct, patterns and practices of Harris, Moss, Rodriguez, Preston, Roles, Shields, Washington and/or other Unknown Members of the SET 'B' squad (John Does 1-5) violated the Fourth and Fourteenth Amendments to the U.S. Constitution.

250. Harris, Moss, Rodriguez, Preston, Roles, Shields, Washington and/or other Unknown Members of the SET 'B' squad (John Does 1-5) subjected the Plaintiffs to these deprivations of their rights maliciously and/or by acting with reckless disregard

for or deliberate indifference to whether the Plaintiffs' rights would be violated by their actions.

251. As a result of the aforementioned federal Constitutional violations, the Plaintiffs suffered severe and permanent physical and emotional injury, mental anguish, humiliation, embarrassment and other related injuries, losses and damages, including the cost of legal defense.

## COUNT 6 (VIOLATION OF THE MARYLAND DECLARATION OF RIGHTS)

252. Plaintiffs incorporate herein the preceding allegations of this Complaint.

253. This Count is brought by all of the Plaintiffs against all of the Defendants, jointly and severally.

254. The Defendants, by arresting, seizing, searching, imprisoning, maliciously prosecuting, and committing other unconstitutional and tortuous acts against the Plaintiffs, violated and deprived them of rights guaranteed to them under the Maryland Declaration of Rights, including, *inter alia*, Articles 24 and 26.

255. As a proximate result of the Defendants' conduct in violation of the Maryland Declaration of Rights, the Plaintiffs sustained economic and non-economic damages for the pain, humiliation, inconvenience, suffering, and embarrassment for the totality of events he was forced to endure.

## COUNT 9 (MALICIOUS PROSECUTION – PLAINTIFFS CRAIG KEMP, FRANKLIN, MOODY, BRICE, BAZEMORE, ROBERTS, FORD, COX, CLIFTON, HINES)

256. Plaintiffs incorporate herein the preceding allegations of this Complaint.

257. This Count is brought by Plaintiffs Craig Kemp, Franklin, Moody, Brice, Bazemore, Roberts, Ford, Cox, Clifton and Hines against Harris, Moss, Rodriguez, Preston, Roles, Shields, Washington, and/or other Unknown Members of the SET 'B' squad (John Does 1-5), jointly and severally.

258. Plaintiffs Craig Kemp, Franklin, Moody, Brice, Bazemore, Roberts, Ford, Cox, Clifton and Hines filed timely notice of claim letters to the Baltimore City Solicitor pursuant to the Local Government Tort Claims Act.

259. Harris, Moss, Rodriguez, Preston, Roles, Shields, Washington, and/or other Unknown Members of the SET 'B' squad (John Does 1-5) arrested, and prosecuted the Plaintiffs Craig Kemp, Franklin, Moody, Brice, Bazemore, Roberts, Ford, Cox, Clifton and Hines when they knew or should have known that there was no probable cause for the arrest and/or prosecution of the Plaintiffs.

260. The prosecution was initiated and continued with malice and/or for a purpose other than to bring the Plaintiffs to justice.

261. The criminal charges initiated and carried on by Harris, Moss, Rodriguez, Preston, Roles, Shields, Washington, and/or other Unknown Members of the SET 'B'

squad (John Does 1-5) against Plaintiffs Craig Kemp, Franklin, Moody, Brice, Bazemore, Roberts, Ford, Cox, Clifton and Hines terminated in Plaintiffs' favor.

262. As a result of the Defendants' wrongful prosecution of Plaintiffs Craig Kemp, Franklin, Moody, Brice, Bazemore, Roberts, Ford, Cox, Clifton and Hines, they suffered severe and permanent physical and emotional injury, mental anguish, humiliation, embarrassment and other related injuries, losses and damages, including the cost of legal defense.

## VI. **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests that this Court:

a.  Award the Plaintiffs actual, compensatory, and consequential damages, in an amount to be determined at trial, against all Defendants jointly and severally;

b.  Award Plaintiff punitive damages, in an amount to be determined at trial, against the Defendants;

c.  Award Plaintiff reasonable attorney's fees and costs, incurred in pursuing this action, as provided under 42 U.S.C. §1988, and;

d.  Award such other and further relief as this Court may deem appropriate.

## VII. **JURY DEMAND**

Plaintiffs hereby demand a trial by jury.

RESPECTFULLY SUBMITTED, this _28_ day of _March_, 2008.

_Christie P. Needleman_
Christie P. Needleman
**Federal Bar Number 23193**
1005 N. Calvert Street
Baltimore, Maryland 21202
Ph:    (410) 752 – 4444
Fax:  (410) 385 - 2023
Email: cpneedleman@hotmail.com

Attorney for Plaintiffs Craig
Kemp, Ronald Cox, Deric Ford,
Thomas Franklin, David Bazemore,
Jawan Roberts and Shahed Moody

_Matthew E. Bennett_
Matthew E. Bennett
**Federal Bar Number 24768**
8720 Georgia Avenue; Suite 701
Silver Spring, Maryland 20910
Ph:    (301) 587 – 3942
Fax:  (301) 589 – 1585
Email: lawyer.bennett@verizon.net

Attorney for Plaintiffs Yvonne
Rice, Crystal Kemp, Sean Cozart
Timothy Clifton, Elway Williams, Michael
Carter, Regina Fair, Colin Hines, Alden
Bridges and Stewart Brice